NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

——————————————————
                               :

JOHN WRIGHT,                    :
                                :

          Plaintiff,        :    Civil Action No. 03-cv-1789 (JLL)
                                :

v.                            :
                                :

NESOR ALLOY CORPORATION    :        **O P I N I O N**
d/b/a PHELPS DODGE HIGH        :
PERFORMANCE CONDUCTORS, PD   :
WIRE AND CABLE, A UNIT OF      :
PHELPS DODGE CORPORATION,    :
MARGARET ENGEL-VOGEL, JOHN  :
SIBILIA, and GERALD CENTANNI,  :
                                :

          Defendants.      :
——————————————————:

**LINARES, District Judge.**

      Before the Court is Defendants Nesor Alloy Corporation ("Nesor") d/b/a Phelps Dodge

High Performance Conductors of NJ, Inc., a unit of Phelps Dodge Corporation ("Phelps Dodge")

and John Sibilia's[1] (hereinafter "Defendants"), motion pursuant to Federal Rules of Civil

Procedure 56(e) for partial summary judgment seeking dismissal with prejudice of Counts One,

Two and Four of the Complaint of Plaintiff John Wright (hereinafter "Plaintiff" or "Wright").

This motion is resolved without oral argument. Fed. R. Civ. P. 78. For the reasons stated herein,

Defendants' motion is granted in part and denied in part.

———————————————

     [1]Margaret Engel-Vogel and Gerard Centanni have been dismissed as parties to this action.

## **BACKGROUND**

Plaintiff filed a complaint in state court on February 21, 2003 which was removed to this Court on April 22, 2003. The Complaint alleges that Plaintiff was retaliated against in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 19:34-1, et seq., that he was discriminated against because of his age in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq., that Defendants violated the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56(a)(25), and various tort and contract claims.

The parties involved in this case have appeared before this Court previously on Defendants' motion to dismiss the Complaint for ineffective service of process pursuant to Federal Rule of Civil Procedure 12(b)(5) and Defendants' motion for judgment on the pleadings and dismissal of Counts One, Three, Four, and Seven of the Complaint pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff cross-moved to extend the time in which to serve Defendants Phelps Dodge, Engel-Vogel and Centanni.

By Opinion and Order issued September 30, 2004 (the "2004 Opinion"), this Court held that service of process was ineffective as to Engel-Vogel and Centanni and declined to use its discretion to grant any extension of time to serve. However, with respect to Phelps Dodge, the Court granted Plaintiff a thirty day extension of time to effectuate proper service of process on Phelps Dodge. Accordingly, by virtue of the Court's decision, the only remaining Defendants in this matter are Sibilia and Phelps Dodge.

Defendants also moved to dismiss Counts One, Three, and Four of the complaint.[2] Counts One and Three assert claims based on Plaintiff's alleged retaliatory discharge pursuant to CEPA, and the NJWHL. Defendants maintained, as they do presently, that these state law claims are preempted by sections 7 and 8 of the National Labor Relations Act, 29 U.S.C. § 151, et seq. ("NLRA"). In its 2004 Opinion this Court found that Counts One and Three would only be preempted if they implicated protected concerted activity under section 7 of the NLRA or conduct that would be prohibited as an unfair labor practice under section 8 of the NLRA. Accordingly, Defendants had (and have in this action) the burden of showing that Counts One and Three were within the jurisdiction of the National Labor Relations Board ("NLRB").

The Court determined that Defendants failed to carry this burden. The Court characterized Plaintiff's CEPA claim as alleging that he was discharged in retaliation for bringing an individual complaint before the New Jersey Department of Labor pursuant to the NJWHL. The Court found that there was no evidence on the record that Plaintiff's discharge was motivated by "anti-union animus." Rather, the Court determined that Plaintiff was apparently discharged for exercising his generally applicable substantive rights under state law. The Court noted that Counts One and Three were not based on rights established by the union contract, but on the NJWHL, which is a state law of general application.  The Court further stated that the Defendants failed to establish that Plaintiff was engaged in other forms of activity protected by the NLRA, or that he was a victim of an unfair labor practice. Defendants contended that

---

[2] Defendants also moved to dismiss Count Seven. However, because this count pertained only to alleged defamatory and libelous statements by Margaret Engel-Vogel, whom this Court found was improperly served, it was not further addressed by this Court.

3

Plaintiff was engaged in protected union activities because his wages were established by a collective bargaining contract, but the Court rejected this argument. Additionally, the Court found that even though Plaintiff may have discussed his grievances with his co-workers, he did not act in concert with them or on their behalf and his activity was thus, not "concerted." The Court concluded that Counts One and Three of the Complaint were not preempted by the NLRA, but proceeded to dismiss Count Three on a different legal basis.

## BACKGROUND

Because the Court considers this case in the context of a motion for summary judgment, the Court will draw all inferences in favor of Plaintiff, the non-movant.  All facts stated herein are undisputed unless otherwise noted.

In 1987, Plaintiff became employed by Nesor as an over-the-road truck driver. In 1996, when the Phelps Dodge Corporation acquired the assets of Nesor, Plaintiff became an employee of Phelps Dodge. Plaintiff's last day of employment with Phelps Dodge was January 23, 2002. Throughout Plaintiff's employment for both companies, he worked out of a facility located at 666 Passaic Avenue in West Caldwell, New Jersey. As part of his duties, Plaintiff maintained a Class A commercial driver's license and operated a tractor trailer on the public roadways. Plaintiff would drive from the West Caldwell facility to other facilities located along the Eastern Seaboard of the United States and Canada. However, as part of his non-driving responsibilities, Plaintiff, along with other truck drivers, "were expected to assist the staff of the Shipping Department in the loading and unloading of trucks (through the use of forklifts), with paperwork and with other tasks around the Shipping Department." (Def. Stmt. Facts ¶ 11; Pl. Stmt. Facts

Opp'n ¶ 11).

During his employment with Phelps Dodge, Plaintiff was a member of a unit of employees at the West Caldwell facility represented for purposes of collective bargaining by the Union of Needletrades, Industrial & Textile Employees, Local 132-98-102 (hereinafter "UNITE" or the "Union"). (Def. Stmt. Facts ¶¶ 11-13; Pl. Stmt. Facts Opp'n ¶¶ 11-13). During the relevant time period, the terms of Plaintiff's employment were controlled by the "Memorandum of Settlement Between Nesor Alloy Corporation dba Phelps Dodge High Performance Conductors West Caldwell Operation, and Union of Needletrades, Industrial & Textile Employees, Local 132-98-102" (the "Collective Bargaining Agreement" or "CBA"). (Lidon Cert. Ex. G).

Plaintiff does not dispute that Defendant John Sibilia ("Sibilia") was, at all relevant times during this litigation, the Production Control Manager for the West Caldwell facility and shipping manager for the West Caldwell facility beginning late 1999 or early 2000. (Def. Stmt. Facts ¶ 8; Pl. Stmt. Facts Opp'n ¶ 8). Gerald Centanni ("Centanni") served as the Plant Manager of the West Caldwell facility until the plant closed in 2002. (Def. Stmt. Facts ¶ 9; Pl. Stmt. Facts Opp'n ¶ 9). Lastly, Margaret Engel-Vogel ("Engel-Vogel") served as the Human Resources Manager at Phelps Dodge's Elizabeth, New Jersey facility and was acting Human Resources Manager for the West Caldwell facility until it closed in 2002. (Def. Stmt. Facts ¶ 10; Pl. Stmt. Facts Opp'n ¶ 10).

On October 9, 2001, Plaintiff forwarded Sibilia a letter in which Plaintiff complained of Phelps Dodge's alleged August 27, 2001 decision to change its pay method to one based on

5

hourly wages.[3] (Lidon Cert. Ex. H). By this letter, Plaintiff stated that he was "requesting a formal union grievance hearing to deal with your breach of this contract over these years. Based on your 40 hour pay rule, I feel I'm owed many hours of overtime. I have all my driver log books from this time period. Nearly 3 years of log book time shows somewhere in the area [sic] 1000 hours of overtime may be owed. The union has been advised of this complaint and I'll wait for them to be in touch with me." (Id.). Plaintiff copied his union representative on the letter. (Id.). On October 12, 2001, Sibilia responded to Plaintiff's letter by letter. In relevant part, the letter is as follows:

> It is not clear whether your letter to me dated October 9, 2001 was intended to be a grievance or not. Your letter, for example, did not anywhere label it or describe it as a grievance. At any rate, if you intended the letter to be a grievance, then this letter will serve as the Step 1 response to the grievance. The grievance does not concern the interpretation or application of a specific provision of the Agreement. The grievance does not set forth the section of the Agreement which it is claimed has been violated. The grievance is denied for this separate and independent reason. You did not discuss the grievance with me and attempt to resolve it before it was submitted. The grievance is denied for this separate and independent reason. The grievance was not submitted within five calendar days after the date of the occurrence giving rise to the grievance. The grievance is denied for this separate and independent reason. There has been no violation of the Agreement in this matter. The grievance is denied for this additional and independent reason.

---

[3]Article 5, Section 5.21 of the CBA provided extra pay to road drivers on top of their hourly wages. (Lidon Cert. Ex. G). When a road driver would go on a "one day, out-of-town run, she [would] receive a payment of $60.00 for that day, in addition to her hourly pay." (Id.). When a road driver would go on "a two-day, overnight, out-of-town run, she [would] receive a payment of $140.00 for those two days and $7.00 per day for food, in addition to her hourly pay." (Id.). Article 6 of the CBA set forth provisions regarding overtime pay. Article 6, Section 6.1 provided that "[h]ours worked in excess of 40 in a workweek will be paid at one and one/half times an employee's hourly pay rate." (Id.).

(Lidon Cert. Ex. I). Sibilia also stated that he would try to contact Plaintiff to set up a meeting to discuss "this and a few other issues." (Id.). Plaintiff met with Sibilia and Engel-Vogel on October 15, 2001. The parties dispute what occurred during the meeting.

Plaintiff sent another letter on October 19, 2001 to Centanni which he copied to his union representative, Ossie Soler, and John Haggerty III, Esq. (Lidon Cert. Ex. K). In this letter, Plaintiff states that "[t]he meeting between John Sibilia, Marge [Engel-Vogel] and myself on October 15, 2001 was to address my *grievance letter* of October 9, 2001." (Id.) (emphasis added). Plaintiff notes that the October 19, 2001 letter "will serve as [his] response to the Step 1 letter of October 12, 2001." (Id.). Plaintiff re-asserts that the Defendant's August 27, 2001 "decision to revert back to the Union contract" was an admission that Defendants had been in breach of such contract for the past three years. (Id.). Plaintiff stated that "[t]his grievance concerns not being paid *as per the contract*. Pay by the hour with overtime after 40 hours. Also NJ State labor laws require overtime after 40 hours." (Id.). Plaintiff alleged in this letter that the former arrangement between Phelps Dodge and its road drivers "circumvented the Union contract." (Id.).

Phelps Dodge responded to this letter by letter dated October 24, 2001 from Centanni, the Plant Manager. (Lidon Cert. Ex. L). In such letter, Mr. Centanni indicated that he is treating Plaintiff's October 19, 2001 letter as a "Step 2 grievance," and that the October 24, 2001 letter is his response to that Step 2 grievance. (Id.). In the same letter, Centanni informed Plaintiff that his grievance was denied because Plaintiff failed to set forth the date of the occurrence giving rise to the grievance, Plaintiff failed to set forth facts relevant to the grievance, the grievance was time-

barred because Plaintiff failed to submit same within five days of the August 27, 2001 meeting which allegedly gave rise to the grievance, and because Phelps Dodge had violated no provision of the CBA. (Id.).

The following events gave rise to the end of Plaintiff's employment with Phelps Dodge. On January 17, 2002 Plaintiff concedes that he contacted both Sibilia and another co-worker to report that he would be absent from work that day. (Def. Stmt. Facts ¶ 33; Pl. Stmt. Facts Opp'n ¶ 33). It is undisputed that the reason Plaintiff gave for his absence was that he was feeling ill from having had too much to drink the day before. (Def. Stmt. Facts ¶ 34; Pl. Stmt. Facts Opp'n ¶ 34). Defendants allege that in the days following, Centanni and Engel-Vogel met with one another to discuss Plaintiff's drinking and whether same posed a safety issue for Phelps Dodge.

On January 23, 2002 Plaintiff was presented with a Conditions of Employment Agreement and was directed to sign the agreement. The ensuing events are disputed with regard to whether Plaintiff had been fired, constructively discharged, or voluntarily left employment following his refusal to sign the Conditions of Employment Agreement. What is undisputed however, is that Plaintiff did not report to work at Phelps Dodge after January 23, 2002.

Plaintiff retained counsel for representation in connection with his "claim for overdue wages and wrongful discharge." (Lidon Cert. Ex. P). By letter to Centanni dated January 25, 2002, Plaintiff's counsel stated "[i]t appears [Centanni has] attempted to use the grievance procedure to prevent any resolution of Mr. Wright's claim on the merits." (Id.). Counsel further stated that Centanni should accept the January 25, 2002 letter "as a formal Demand for Arbitration in accordance with the Agreement which governs this dispute." (Id.). Counsel further states that if Centanni should fail to respond with the names of arbitrators, Plaintiff would seek to

compel arbitration. (Id.). This letter also memorialized Plaintiff's demand for certain back wages and confirmed that he would be filing a complaint with the Division of Labor for same. (Id.).

On April 29, 2002, Plaintiff submitted a claim to the Division of Wage and Hour Compliance of the New Jersey Department of Labor (the "Wage and Hour Division") alleging that Phelps Dodge had failed to pay him for overtime work. (Def. Stmt. Facts ¶ 56; Pl. Stmt. Facts Opp'n ¶ 56). On January 14, 2003, the claim was adjudicated. The Wage and Hour Division determined that Phelps Dodge had violated N.J.S.A. 34:11-56(a)(4), by failing to pay Plaintiff's overtime wages.  A monetary award was entered in favor of Plaintiff against Phelps Dodge. (See Pl. Ex. 8).

On December 31, 2002, more than eleven months after Plaintiff's last day, Phelps Dodge closed its West Caldwell, New Jersey facility. All employees, numbering approximately 150, with the exception of Centanni, were terminated as a result of the plant closing. (Def. Stmt. Facts ¶ 54; Pl. Stmt. Facts Opp'n ¶ 54). However, Phelps Dodge found Russell Grish ("Grish"), another truck driver for Phelps Dodge, a job outside of the company. Grish, at the time of the plant closing, was approximately ten years younger than Plaintiff. The company that Grish went to work for was the trucking company that Phelps Dodge outsourced all of its trucking needs to after the closing of the West Caldwell facility. Grish, therefore, was apparently able to retain his job as a road driver for the Defendant, but as an employee of another entity. (Def. Stmt. Facts ¶ 56).

**LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, summary judgment may be granted when, drawing all inferences of the non-moving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987), cert. dismissed, 483 U.S. 1052 (1987). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, for which that party will bear the burden at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Id. Once that burden has been met, the non-moving party must set forth "specific facts showing there is a genuine issue for trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586.

**DISCUSSION**

Defendants move for summary judgment on Counts One, Two and Four of the Complaint. Defendants seek to have each of these claims dismissed with prejudice. The Court will address each of the arguments in turn.

**A.     Count One**

Defendants move for summary judgment on Count One of the Complaint on two alternative grounds. First, Defendants move on the basis that Plaintiff's CEPA claim is

10

preempted by the NLRA and is accordingly time-barred. Defendants also move for summary judgment on the basis that Plaintiff has failed to make out a prima facie case under CEPA and has failed to carry his burden regarding allegedly unlawful retaliation. In response, Plaintiff argues that Defendants may not re-argue the issue of preemption, that his CEPA claim is neither preempted nor time-barred, and that he has set forth sufficient evidence to sustain such claim.

### 1.    Is Count One Subject to Preemption?

As a preliminary matter, the Court must first determine whether Defendants properly raise preemption, despite this Court having ruled on the same issue in its 2004 Opinion.

In the 2004 Opinion the Court addressed Defendants' motion for summary judgment on the pleadings and dismissal of Counts One, Three and Four of the Complaint. This Court declined to dismiss Plaintiff's CEPA on the basis that it was preempted by the NLRA. Since the Court based its determination only on the Complaint and its attachments, the Court's construction of the CEPA claim focused only on the Plaintiff's complaint to the Department of Labor as the source of the alleged retaliatory termination by the Defendants. While this was sufficient to overcome Defendants initial motion for judgment on the pleadings, the Court did not elaborate on the other basis pleaded by Plaintiff to support his allegation of retaliation by the Defendants, namely his letters to Defendants alleging violations of State over-time laws.[4] Therefore, in the current action, this Court must view Plaintiff's CEPA claim as premised on both the complaint filed with the Department of Labor and the series of letters Plaintiff wrote to

---

[4]From the face of the Complaint, it was not clear to the Court that such letters existed, nor the relevance of "October 9, 2001" to Plaintiff's CEPA claim.

Defendants. Accordingly, the Court determines that it may, and must, revisit its previous preemption determination.[5]

Defendants argue that Plaintiff could not have been terminated as a result of his filing of a complaint with the Wage and Hour Division because his complaint was filed April 29, 2002, some time *after* Plaintiff ended his employment with Phelps Dodge. Thus, Defendants argue that Plaintiff's CEPA claim is necessarily based upon the complaints Plaintiff made to Defendants, beginning in October, 2001, and relating to Defendants' alleged illegal withholding of overtime pay. Plaintiff does not argue against this interpretation of the Complaint. (Pl. Br. Opp'n at 3-5). Rather, Plaintiff argues that the timing of Plaintiff's Wage and Hour Division complaint is irrelevant to preemption. (Pl. Br. Opp'n at 5). The Court disagrees.

---

[5] While an unsuccessful motion to dismiss does not preclude a motion for summary judgment directed at the same claim, the law-of-the-case doctrine does appeal to the "good sense" of the court to err strongly on the side of allowing previously holdings to stand. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988). "Where litigants have once battled for the court's decision, they should neither be required, nor without good reason be permitted, to battle for it again." Zdanok v. Glidden Co., Durkee Famous Foods Div., 327 F.2d 944, 952-953 (2d Cir. 1964). However, "it is now well settled that the "law of the case" does not rigidly bind a court to its former decisions." Higgins v. California Prune & Apricot Grower, Inc., 3 F.2d 896, 898 (2d Cir. 1924) (citing Messenger v. Anderson, 225 U.S. 436 (1912). While the law-of-the-case doctrine offers courts the ability to avoid re-litigating issues, and supports the principle of stare decisis which is emphasized in our legal system, a court "must be careful to prevent the doctrine from being used to prevent a properly raised argument from being considered. . . ." UA Theatre Circuit v. Twp. of Warrington, 316 F.3d 392, 398 (3d Cir. 2003). In fact, "several commonly recognized exceptions to the doctrine of law of the case permit reconsideration of an issue previously decided in the same case. For example... if new evidence is available . . .[while] hearing the issue. . . the question has not really been decided earlier and is posed for the first time... [the judge] should be free to render a decision." Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 169-170 (3d Cir. 1982) (internal citations omitted). The facts of this case present the court with a situation very similar to this recognized exception.

With the record now fully established, the Court finds that its prior preemption determination was based on an interpretation of Count One which has been rendered a legal impossibility.[6] It is impossible for Plaintiff's Wage and Hour Division complaint to constitute the basis for his CEPA claim as this Court previously held. Through discovery, it came to light that Plaintiff did not file his Wage and Hour Division claim until *after* his employment with Phelps Dodge had ended. Causation is thus completely absent. Accordingly, the Court will construe Plaintiff's CEPA claim as based on the remaining pertinent allegations in Count One – that Plaintiff was terminated based on his "reported violations of law and policy" on October 9, 2001 and on subsequent occasions to Sibilia, Centanni, and Engel-Vogel. (Compl. ¶¶ 17, 19). Accordingly, the Court must determine whether these activities are preempted by the NLRA.

Section 7 of the NLRA protects the right of employees to "assist labor organizations" and "to engage in other concerted activities." 29 U.S.C. § 157. Section 8 of the NLRA makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" in section 7, and "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subsection." Id.

---

[6]In the 2004 Opinion, the Court interpreted Count One to allege that Plaintiff was discharged in retaliation for bringing an individual complaint before the Wage and Hour Division pursuant to the New Jersey Wage and Hour Law. (2004 Op. at 31). Accordingly, the Court determined that such claim was not preempted because it was "not based on rights established by the union contract, but on the Wage and Hour Law, which is a state law of general application. Plaintiff's membership in a union is a mere happenstance." (2004 Op. at 32). The Court further determined that "Defendants have also not established that Plaintiff was engaged in other forms of activity protected by the NLRA, or that he was a victim of an unfair labor practice." (2004 Op. at 32). However, the Court has now determined that Plaintiff's CEPA claim *cannot* be based on his complaint to the Wage and Hour Division for Defendants' alleged violations of the Wage and Hour Law.

§§ 158(a)(1), (4). If an "activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (1959). Stated alternatively, "state regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the [NLRA]." Belknap v. Hale, 463 U.S. 491, 498 (1983). The party claiming preemption bears the burden of proof.

Count One will only be preempted if it "implicates protected concerted activity under section 7 of the NLRA or conduct that would be prohibited as an unfair labor practice under section 8 of the NLRA." Voilas v. General Motors Corp., 170 F.3d 367, 378 (3d Cir. 1999). Defendants argue that Plaintiff's letters constituted a union grievance and invocation of the grievance process set forth in the CBA. Defendants thus argue that Count One alleges that Plaintiff was terminated because he acted to enforce the terms of the union contract, Plaintiff's CEPA claim is preempted by the NLRA.

Defendants argue that Plaintiff's letters dated October 9, 2001 and October 19, 2001 constituted a grievance within the terms of the applicable CBA. Further, since Plaintiff's alleged grievance complained of an alleged violation of the collective bargaining agreement, Defendants contend that such action, even though asserted only by an individual, constitutes concerted activity protected by Section 7 of the NLRA according to NLRB v. City Disposal Systems, 465 U.S. 822, 831-32 (1984) sufficient to establish preemption. Plaintiff argues that this Court correctly determined that Plaintiff's CEPA claim was not preempted by the NLRA and should not revisit this determination. In support of this proposition, Plaintiff states that "plaintiff acted to

14

enforce his rights to overtime pay in accordance *with the collective bargaining agreement* and New Jersey law." (Pl. Br. Opp'n at 4) (emphasis added). Plaintiff asserts that "[t]hroughout the course of this dispute, plaintiff was acting to obtain a benefit required by New Jersey law which was available to both union and nonunion employees." (Pl. Br. Opp'n at 5). Plaintiff argues that his actions "did not rise to the level of 'protected concerted activity,'" but does not cite to the record or applicable case-law in support of this contention. (Pl. Br. Opp'n at 5).

Defendants argue that "plaintiff was engaged quite plainly in the union activity of prosecuting a grievance in accordance with the grievance and arbitration procedure contained in the collective bargaining agreement between Phelps Dodge and plaintiff's union." (Def. Br. at 12). Defendants contend that the letters exchanged between Plaintiff and Defendants on October 9, 2001, October 12, 2001, October 19, 2001, and October 24, 2001 support their argument that Plaintiff's CEPA claim was premised upon activities within the preemptive scope of the NLRA. (Def. Br. at 13). Defendants claim that Plaintiff's wages were established by the CBA, Plaintiff invoked the arbitration and grievance procedure of the CBA, and Plaintiff explicitly alleged that the alleged mishandling of his overtime pay violated the terms of the CBA. (Def. Br. at 13). The Court agrees.

The construction[7] of the terms of a collective bargaining agreement is "a pure question of law requiring plenary review." Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993) (internal citations omitted). Thus, the court should rely on the principles of contract interpretation for determining the intent of the parties with regard to unclear or ambiguous terms. The term "grievance," "is not a term of art, and has no connotation different from its meaning in ordinary use. Bakery & Confectionery Workers Union v. Nolde Bros., Inc., 530 F.2d 548, 556 (4th Cir. 1975) (internal citations omitted). In this regard, the principles of contract interpretation set forth by the Supreme Court are such that terms should be given a liberal construction giving all inferences to the intentions of the party in including such a term in their contract. Id. If, after evaluating the structure of the collective bargaining agreement, this court determines that the actions taken by a party constitute a grievance, the court's inquiry should end. Therefore, if the letters sent by Plaintiff to Defendants are grievances as defined by the collective bargaining agreement, Plaintiff's retaliation claim should be dismissed as inappropriate to be litigated before this Court since it would trigger preemption by implicating terms of the CBA.

---

[7]The distinction between interpretation and construction has been described as follows: "By 'interpretation of language' [the court] determine[s] what ideas that language induces in other persons. By 'construction of the contract' as that term will be used. . . [the court] determine[s] its legal operation – its effect upon the action of courts and administrative officials." John F. Harkins Co. v. Waldinger Corp., 796 F.2d 657, 659 (3d Cir. 1986). In this case, determining the meaning of the word "grievance" and its application to the parties in this case will have a major jurisdictional effect, possibly precluding this court from exercising jurisdiction over Plaintiff's retaliation claim. Accordingly, that determination of whether Plaintiff's letters constitute grievances under the CBA implicate principles of contract construction.

From a careful review of the letters at issue, the language contained therein, and the applicable provisions of the CBA, this Court determines that Plaintiff was asserting a grievance pursuant to CBA procedures for overtime pay allegedly guaranteed by the terms of the CBA. Section 21.1 of the CBA defines a grievance as "an actual dispute concerning the interpretation or application of a specific provision of this Agreement in connection with a specific act or situation." (Lidon Cert. Ex. J). The process sets forth a series of "Steps," beginning with "Step 1," culminating in "Step 3" and eventually leading to arbitration (Id.).

Plaintiff argues that only Plaintiff's UNITE representative was able to assert a grievance on Plaintiff's behalf. (Pl. Br. Opp'n at 4). Thus, since the representative, Ossie Soler, never did so, Plaintiff claims that he never asserted a grievance under the CBA. (Id.). In support of this contention, Plaintiff cites to a March 19, 2002 letter from counsel for Defendants to Plaintiff's counsel in which Defendants' counsel states only the Union could appeal a grievance to arbitration under the CBA. (Lidon Cert. Ex. BB). However, this letter does not state that only the Union could initiate and pursue a *grievance*, rather, that only the Union could pursue an *appeal* of such grievance. (Id.). Accordingly, this issue is irrelevant to a determination of whether Plaintiff's letters constituted a grievance.

Plaintiff's October 9, 2001 letter requested "a formal union grievance hearing to deal with [Defendants'] breach of contract." (Lidon Cert. Ex. H). Defendants' response, dated October 12, 2001, treated the October 9, 2001 as a grievance as defined under the CBA and denied such grievance for various reasons. (Lidon Cert. Ex. I). Plaintiff sent a second letter on October 19, 2001 which asks Defendants to treat the letter "as [Plaintiff's] response to the Step 1 letter of October 12, 2001." (Lidon Cert. Ex. K). Plaintiff stated that "[t]his grievance concerns not being

17

paid *as per the contract*. Pay by the hour with overtime after 40 hours. Also NJ State labor laws require overtime after 40 hours." (Id.). In the same letter, Plaintiff alleged that the former pay arrangement between Phelps Dodge and its road drivers "circumvented the Union contract." (Id.). Defendants responded by letter dated October 24, 2001 which informed Plaintiff that Phelps Dodge was treating the October 19, 2001 letters as a "Step 2 grievance." (Lidon Cert. Ex. L). Further, the Court notes that Plaintiff's counsel stated in a January 25, 2002 letter to Defendants that Defendants should accept the letter "as a formal Demand for Arbitration in accordance with the Agreement which governs this dispute." (Lidon Cert. Ex. P).

It is clear to the Court that Plaintiff invoked the grievance procedures of the CBA by his letters dated October 9, 2001 and October 19, 2001. Plaintiff explicitly stated that he was seeking benefits due and owing under the CBA and that he was pursuing such a grievance for Defendant's alleged breach of the Union contract.[8] Further, Plaintiff did not object to Defendants' characterization of Plaintiff's letter as "Step 1" and "Step 2" grievance letters, and such terminology directly mirrors that contained within Article 21 of the CBA. As a matter of law, this Court determines that Plaintiff's correspondence with Defendants regarding allegedly owing overtime pay constitutes a grievance seeking to enforce the terms of the CBA which pertained to overtime pay.

The phrase "concerted activity" is not defined within the NLRA. City Disposal, 465 U.S. at 831. However, two related decisions of the National Labor Relations Board provide guidance. In Meyers Indus., Inc. v. Prill, 268 N.L.R.B. 493 (1984) ("Meyers I"), the Board stated that an

_____

[8] The Court notes that one of Plaintiff's letters alleged that Defendants were also in violation of New Jersey state law. However, this fact is irrelevant to the Court's analysis.

employee's action may be deemed "concerted" for purposes of section 7 only if the action is "engaged in with or on the authority of other employees, and not solely by and on behalf of the employee himself." Id. at 497 (footnote omitted). In Meyers Indus., Inc. v. Prill, 281 N.L.R.B. 882 (1986) ("Meyers II"), the Board explained that its objective standard of concerted activity "encompasses those circumstances where individual employees seek to initiate or to induce or to prepare for group action, as well as individual employees bringing truly group complaints to the attention of management." Id. at 887; see also Williams v. Watkins Motor Lones, Inc., 310 F.3d 1070, 1072 (8th Cir. 2002) ("[I]ndividuals acting on their own behalf are not engaged in concerted activity"). However, the Supreme Court, in its City Disposal decision broadened the scope of "concerted activity" to encompass "a lone employee's invocation of a right grounded in his collective-bargaining agreement."[9] 465 U.S. at 833. Notably, the Court also stated that "[t]o be sure, the principal tool by which an employee invokes the rights granted him in a collective-bargaining agreement is the processing of a grievance according to whatever procedures his collective-bargaining agreement establishes. *No one doubts that the processing of a grievance in such a manner is concerted activity within the meaning of § 7*." Id. at 835 (emphasis added). This explicit holding ends the Court's preemption analysis.

 Having determined that Plaintiff utilized the grievance procedures of the CBA by his October 9, 2001 and October 19, 2001 letters, and that such grievance invoked his rights to

---

 [9]The Court noted that "[t]he invocation of a right rooted in a collective-bargaining agreement is unquestionably an integral part of the process that gave rise to the agreement. That process - beginning with the organization of a union, continuing into the negotiation of a collective-bargaining agreement, and extending through the enforcement of the agreement - is a *single, collective activity*." City Disposal, 465 U.S. at 831-32 (emphasis added) (footnote omitted).

overtime pay set forth in Article 6 of the CBA, there can be no doubt that Plaintiff's activities which form the basis of his CEPA claim constitute concerted activities under § 7 of the NLRA, and that Count One of the Complaint is preempted.[10] Accordingly, the Court determines that Count One of the Complaint is subject to <u>Garmon</u> preemption.

### 2.    Is Count One Time-Barred?

This Court has determined that Count One is preempted by the NLRA. Accordingly, Defendants argue that as a claim brought under § 7 or § 8 of the NLRA, Count One is time-barred since it was not filed within six months of his separation from Phelps Dodge as required by 29 U.S.C. § 160(b). Defendants move for summary judgment on Count One. With respect to Defendants' time-bar arguments, Plaintiff claims that such arguments are inapplicable since Count One is not preempted by the NLRA and meets the applicable requirements for a CEPA claim.

Title 29, Section 160(b) of the United States Code requires a person complaining of an unfair labor practice to file a charge with the NLRB no later than six months after the occurrence of such unfair labor practice.[11] <u>Id.</u>. Here, the alleged unfair labor practice was Defendants' retaliatory termination of Plaintiff in response to his grievance. Variously, Plaintiff asserts that he

---

[10]A claim will be preempted if it "implicates protected concerted activity under section 7 of the NLRA or conduct that would be prohibited as an unfair labor practice under section 8 of the NLRA." <u>Voilas</u>, 170 F.3d at 378. Section 8 of the NLRA provides that it is an unfair labor practice to discharge an employee for union activities (i.e. Plaintiff's grievance). 29 U.S.C. § 158(a)(4).

[11]The statute provides "[t]hat no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made . . . ." 29 U.S.C. § 160(b).

was terminated on January 23, 2002 and February 27, 2002. (See Compl. ¶ 15; Pl. Stmt. Facts

Opp'n ¶ 43). Plaintiff filed his state court complaint on February 21, 2003 and same was

removed to this Court on April 22, 2003. However, the complaint, as filed in state court, did not

allege any violation of the NLRA. Furthermore, Plaintiff fails to allege that he filed the requisite

charge with the NLRB less than six months after the end-date of his employment. In addition,

there is no indication in the record that Plaintiff has complied with the requirements of 29 U.S.C.

§ 160(b). Therefore, the Court concludes that Plaintiff's NLRA claim is time-barred pursuant to

29 U.S.C. § 160(b).[12] Accordingly, Defendants' motion for summary judgment with respect to

Count One is granted. Count One is dismissed with prejudice.

**B.     Count Two**

Count Two sets forth a claim for age discrimination pursuant to the New Jersey Law

Against Discrimination, N.J.S.A. 10:5-1, et seq. Plaintiff asserts that he was terminated on

February 27, 2001 "on account of his age" and that the individual Defendants "aided and abetted

in his wrongful termination." (Compl. ¶23). Defendants move for summary judgment on this

claim on the basis that Plaintiff fails to demonstrate the third and fourth elements of a prima facie

case of age discrimination.

For Title VII cases, the Supreme Court has established a burden shifting framework with

the complainant carrying the initial burden of establishing a prima facie case of discrimination.

See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

---

[12]Plaintiff's opposition does not assert that Plaintiff is entitled to an exception contained within 29 U.S.C. § 160(b).

> First, the plaintiff has the burden of proving by the preponderance
> of the evidence a prima facie case of discrimination. Second, if the
> plaintiff succeeds in proving the prima facie case, the burden shifts
> to the defendant >to articulate some legitimate, nondiscriminatory
> reason for the employee's rejection.= Third, should the defendant
> carry this burden, the plaintiff must then have an opportunity to
> prove by a preponderance of the evidence that the legitimate
> reasons offered by the defendant were not its true reasons, but were
> a pretext for discrimination.

Marzano v. Computer Science Corp., 91 F.3d 497, 503 (3d Cir. 1996) (citing Texas Dept. of

Community Affairs v. Burdine, 450 U.S. 248 (1981)).

"The Supreme Court of New Jersey has adopted the [McDonnell Douglas] methodology

governing federal employment discrimination law for state claims of a similar nature." Marzano,

91 F.3d at 502. Under NJLAD, Α[t]he McDonnell Douglas framework, as modified by the

Supreme Court of New Jersey, requires a plaintiff to satisfy four elements by a preponderance of

the evidence to establish a prima facie case of age discrimination." Wright v. L-3 Communs.

Corp., 227 F. Supp. 2d 293, 298 (D.N.J. 2002). Plaintiff must demonstrate that (1) he belongs to

a protected class; (2) he was qualified for the position in question; (3) he was discharged; and (4)

the employer sought others to perform the same work after he was terminated from his position.

Id., See Bergen Commercial Bank v. Sisler, 723 A.2d 944, 955-56 (N.J. 1999).

Once a prima facie case has been established,

> [t]he burden then must shift to the employer to articulate some
> legitimate, nondiscriminatory reason for the employee's rejection."
> McDonnell Douglas, 411 U.S. at 802.  Relative to NJLAD, "[t]he
> burden-shifting analysis enunciated by the Supreme Court in
> McDonnell Douglas and developed and refined in subsequent
> judicial forays into the subject is designed to ensure that plaintiff
> has enough evidence to construct the chain of inferences described
> in the previous paragraph, and therefore get to trial. In the first

instance, the plaintiff must establish a prima facie case.  The evidentiary burden at this stage is rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent -i.e., that discrimination could be a reason for the employer's action. As we have held on numerous occasions, this initial burden is not intended to be onerous.

Marzano, 91 F.3d at 508.

Notably, the parties only dispute whether the third and fourth elements of the prima facie case have been established. (Def. Br. at 26). That is, whether Plaintiff was discharged and whether Defendants sought others to perform the same work after Plaintiff was terminated from the position.

Relative to the third element, the parties dispute whether Plaintiff abandoned his employment or was terminated and each party presents facts in support of their respective arguments. Defendants argue that Plaintiff was not terminated, but rather abandoned his employment when he refused to return to work. (Def. Stmt. of Facts ¶¶ 38, 43, 44, 47). In contrast, Plaintiff contends that when Sibilia required him to sign the Conditions of Employment Agreement and Plaintiff declined, Plaintiff believed he had been terminated that same day. (Pl. Stmt. Facts Opp'n ¶ 38). Accordingly, in analyzing the record in the light most favorable to the non-moving party, there is, at a minimum, a genuine issue of material fact as to how Plaintiff's employment ended.  "It is true that if plaintiff can then produce evidence to cast doubt on the employer's stated reason, the case should go to trial." Marzano, 91 F.3d at 509.

Relative to the fourth element, the parties dispute whether Defendants sought others to perform Plaintiff's duties following his separation from the company. Defendants contend that

Plaintiff is unable to demonstrate that similarly situated younger employees received more favorable treatment than Plaintiff. (Def. Br. at 29). Plaintiff counters that since a younger employee, Russell Grish, was tapped to take over Plaintiff's driving responsibilities, he satisfactorily establishes the fourth prong. (Pl. Stmt. Facts ¶¶ 72, 73). Plaintiff also asserts that Defendants sought people to take Plaintiff's place, but were unable to locate anyone. (Pl. Stmt. Facts ¶ 73). "[To] satisfy the fourth element of a prima facie case of age discrimination under the LAD, an LAD plaintiff must only show that his employer sought others to perform the same work after he was terminated from his position." Wright v. L-3 Communs. Corp., 227 F. Supp. 2d at 294-295. Genuine issues of material fact exist regarding the timing of Plaintiff's termination of employment and regarding the solicitation and hiring of a replacement employee.

Since the Court determines that issues of fact exist as to the third and fourth elements of the prima facie case for age discrimination, the Court hereby denies Defendants' motion for summary judgment.[13]

---

[13]Further, the Court notes that even if assuming arguendo, this Court determined that Plaintiff had made out a prima facie case of age discrimination under NJLAD, genuine issues of material fact exist with respect to Defendants' pretext arguments. Defendants contend that "[t]here is no dispute that plaintiff had an alcohol problem." (Def. Br. at 30). However, this statement mischaracterizes Plaintiff's position. Although Plaintiff admits that he was a daily drinker, he does not characterize same as a "problem" which could have provided justification for Defendants' actions. Accordingly, this Court determines that this dichotomy alone creates an issue of fact which precludes summary judgment on this claim.

Since the Court determines that genuine issues of material fact exist with respect to the prima facie elements of an age discrimination claim under NJLAD, the Court will deny Defendants' motion for summary judgment on this claim.[14]

**C.      Count Four**

In Count Four, Plaintiff asserts that he is permitted to bring an action on behalf of himself and other similarly situated employees for overtime pursuant to the NJWHL. (Compl. ¶ 28). Defendants argue that Count Four should be dismissed as time-barred and since Plaintiff is improperly attempting to use the NJWHL as a vehicle for cost and fees recovery. Plaintiff argues that the Court should not dismiss this claim because he is due certain counsel fees and costs which stem from his successful Wage and Hour Division complaint. Plaintiff further argues that he and his co-workers are entitled to overtime pay pursuant to the NJWHL.

The New Jersey Wage and Hour Law states that

> If any employee is paid by an employer less than the minimum fair wage to which such employee is entitled under the provisions of this act or by virtue of a minimum fair wage order such employee may recover in a civil action the full amount of such minimum wage less any amount actually paid to him or her by the employer *together with costs and such reasonable attorney's fees* as may be allowed by the court, and any agreement between such employee and the employer to work for less than such minimum fair wage shall be no defense to the action. An employee shall be entitled to maintain such action for and *on behalf of himself or other employees similarly situated*, and such employee and employees may designate an agent or representative to maintain such action for and on behalf of all employees similarly situated.

---

[14]Since the Court was unable to determine whether Plaintiff is able to make out a prima facie case, the Court need not employ the burden-shifting portion of the relevant analysis.

N.J.S.A. 34:11-56a25 (emphasis added).  The Act also states that:

> No claim for unpaid minimum wages, unpaid overtime compensation, or other damages under this act shall be valid with respect to *any such claim which has arisen more than 2 years prior to the commencement of an action for the recovery thereof*. In determining when an action is commenced, the action shall be considered to be commenced on the date when a complaint is filed with the Commissioner of the Department of Labor and Industry or the Director of the Wage and Hour Bureau, and notice of such complaint is served upon the employer; or, where an audit by the Department of Labor and Industry discloses a probable cause of action for unpaid minimum wages, unpaid overtime compensation, or other damages, and notice of such probable cause of action is served upon the employer by the Director of the Wage and Hour Bureau; or where a cause of action is commenced in a court of appropriate jurisdiction.

N.J.S.A. 34:11-56a25.1 (emphasis added).

Plaintiff's state court complaint was filed on February 21, 2003 and was removed to this Court on April 22, 2003. Since the state court was "a court of appropriate jurisdiction," if this Court applies the two-year limitations period of the NJWHL, all overtime claims are necessarily time-barred if such arose earlier than February 21, 2001. In Plaintiff's brief in opposition, Plaintiff states that "Plaintiff brings this action on behalf of himself and other road drivers for overtime compensation which was not paid from the period of October 1, 1987 through August 27, 2001." (Pl. Br. Opp'n at 17). Applying the relevant limitations period then, it appears that the only wage claims Plaintiff (and others) may potentially pursue are those that arose and/or accrued between February 21, 2001 through August 27, 2001. Thus, any claim relating to an earlier period is necessarily time-barred.

With respect to Plaintiff's claim on behalf of himself, the Court notes that Plaintiff filed an April 29, 2002 complaint with the Wage and Hour Division seeking wages of $16,487.25 plus interest based upon the time period of October 1, 1998 through August 25, 2001. Defendants were notified of this complaint and Plaintiff was ultimately successful. By letter dated January 15, 2003, the New Jersey Department of Labor informed Phelps Dodge that it was liable for an award of $4,488.60, with $4,057.82 owed to Plaintiff. However, as Defendants point out, Plaintiff "has failed to produce any evidence showing that he is owed any amount of unpaid overtime allocable to the limitations period (that is, after February 21, 2001) that was not covered by the January 14, 2003 award." (Def. Br. at 33). Defendant thus move for summary judgment on this claim. Plaintiff does not address this contention in his opposition brief. Rather, Plaintiff makes only two citations to the record, and neither creates a genuine issue of material fact with respect to this issue. Accordingly, the Court hereby grants Defendant's motion for summary judgment with respect to Count Four to the extent that such claim was brought on behalf of Plaintiff for unpaid overtime.

To the extent that Count Four asserts a claim pursuant to the NJWHL on behalf of those employees similarly situated to Plaintiff, namely, Grish, Mr. Sloginski, Mr. Smith, Mr. Betar, Mr. Wigfall and Mr. Marchigano, such claim shall be dismissed for various reasons. With respect to Mr. Wigfall, Defendant contends that any claim on his behalf cannot proceed because he executed a Settlement Agreement and General Release with Defendants. (Def. Br. at 33; Def. Stmt. Facts ¶ 25). Plaintiff does not oppose this contention. Accordingly, any overtime claim on behalf of Mr. Wigfall is dismissed.

With respect to Mr. Marchigano, Mr. Betar, and Mr. Sloginski, Defendants contend that these employees' claims must be dismissed because their employment at Phelps Dodge ended on October 29, 1998, March 25, 1999, and March 24, 2000, respectively. (Def. Br. at 33; Def. Stmt. Facts ¶¶ 20, 21, 22). Thus, Defendants argue that these Plaintiffs cannot possibly have overtime claims which arose after February 21, 2001. Plaintiff does not specifically address nor oppose this argument in his opposition brief. The Court agrees with Defendant's logic, will grant summary judgment, and dismisses these claims.

With respect to Mr. Smith and Grish, Defendants request the Court to dismiss any overtime claims on their behalf since Plaintiff has failed to introduce any evidence to establish that these employees were owed overtime for any time period between February 21, 2001 and June 1, 2001. (Def. Br. at 33-34). Plaintiff does not oppose this argument in his brief, nor does Plaintiff point to any evidence in the record which tends to establish a genuine issue of material fact on this issue. To deny summary judgment, and to allow this claim to proceed, the Court must have before it something more than conjecture and allegations.[15] Therefore, this Court will grant

---

[15]In his opposition brief, Plaintiff states that the road drivers were owed overtime wages, but attaches no payroll records, driver logs, or additional certification or report which tend to prove that the employees were in fact, owed overtime. In circumstances where a nonmoving party fails to oppose the motion, Fed. R. Civ. P. 56(e) provides that the court may only grant the moving party's motion for summary judgment "if appropriate." See, e.g., Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990); see also Damiano v. Sony Music Entm't, Inc., 975 F. Supp. 623, 627 (D.N.J. 1996) (granting summary judgment because the court considered the motion unopposed); U.S. v. Rohm & Haas Co., 939 F. Supp. 1157, 1161 (D.N.J. 1996) (same). A moving party's motion is appropriately granted when that party is entitled to judgment as a matter of law. Anchorage Assocs., 922 F.2d at 175. Here, taking the facts as set forth by the Defendants as true, Defendants are entitled to summary judgment on these claims.

Defendants summary judgment on this claim. Claims on behalf of Mr. Smith and Grish are dismissed.

Plaintiff also asserts that he is entitled to recover costs and attorney's fees pursuant to N.J.S.A. 34:11-56a-25. (Pl. Opp. Br. at 21). Plaintiff contends that since he succeeded with his claim before the Wage and Hour Division, he is owed fees and costs. (Id.). Defendants move for summary judgment on this issue because the prior proceeding was not a "civil action" as contemplated by N.J.S.A. 34:11-56a-25 and because his award did not provide for fees and costs to be paid to Plaintiff.

The Court determines that Plaintiff is not entitled to recover fees and costs in conjunction with his concluded administrative action before the Wage and Hour Division. The Court has reviewed the award issued by the Wage and Hour Division and notes that it does not contain any award of fees or costs. Accordingly, Plaintiff's attempt to recover fees and costs here based on that same action and award seems an improper appeal of the Wage and Hour Division decision. Plaintiff has produced no legal authority in support of his position beyond the statutory language of N.J.S.A. 34:11-56a-25 which does not provide what he seeks. Plaintiff has not established that any genuine issue of material fact exists with respect to this portion of Count Four. Accordingly, Defendants' motion for summary judgment as to Count Four is granted. Count Four, in its entirety, is dismissed with prejudice.

## **CONCLUSION**

For the reasons set forth in this Opinion, Defendants' motion for summary judgment is granted in part and denied in part.

                                        /s/ Jose L. Linares
                                        United States District Judge

DATED: September 29, 2006